## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | |
|---|---|
| **SIERRA CLUB,** *et al.,* | ) |
| | ) |
| **Petitioners,** | ) |
| | ) |
| **v.** | ) **Case No. 20-60303** |
| | ) |
| **UNITED STATES ENVIRONMENTAL** | ) |
| **PROTECTION AGENCY,** *et al.,* | ) |
| | ) |
| **Respondents.** | ) |

## UNOPPOSED MOTION FOR LEAVE TO INTERVENE
## IN SUPPORT OF RESPONDENTS

Matthew Kuryla
Telephone: (713) 229-1145
matthew.kuryla@bakerbotts.com
Aaron M. Streett
Telephone: (713) 229-1855
aaron.streett@bakerbotts.com
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995

*Counsel for Movant-Intervenors BCCA Appeal Group, TCC, and TXOGA*

# **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Baker Botts L.L.P. (Counsel for Movants-Intervenors)

- Barr, William, Attorney General, U.S. Department of Justice (Counsel for Respondents)

- BCCA Appeal Group (Movant-Intervenor)

- Bossert Clark, Jeffrey, Assistant Attorney General, Environmental and Natural Resources Division, U.S. Department of Justice (Counsel for Respondents)

- Downwinders at Risk (Petitioner)

- Gormley, Neil (Counsel for Petitioners)

- Johnson, Seth L. (Counsel for Petitioners)

- Kuryla, Matthew (Counsel for Movants-Intervenors)

- Leopold, Matthew Z. (General Counsel for Respondent United States Environmental Protection Agency)

- Sierra Club (Petitioner)

- Streett, Aaron M. (Counsel for Movants-Intervenors)

- Texas Chemical Council (Movant-Intervenor)

- Texas Environmental Justice Advocacy Services (Petitioner)

- Texas Oil & Gas Association (Movant-Intervenor)

- United States Environmental Protection Agency (Respondent)

- Wheeler, Andrew, Administrator, United States Environmental Protection Agency (Respondent)

Dated: May 14, 2020                           Respectfully submitted,

                                              *s/ Matthew Kuryla*
                                              Matthew Kuryla

                                              *Counsel for Movant-Intervenors BCCA Appeal Group, TCC, and TXOGA*

## <u>MOTION FOR LEAVE TO INTERVENE</u>

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Circuit Rules 15.5 and 27, BCCA Appeal Group, the Texas Chemical Council ("TCC"), and the Texas Oil & Gas Association ("TXOGA") (together, "Movants") respectfully move to intervene in support of Respondents in the challenge filed by Sierra Club, Downwinders at Risk, and Texas Environmental Justice Advocacy Services to the two U.S. Environmental Protection Agency's ("EPA") final rules entitled *Air Plan Approval; Texas; Houston-Galveston-Brazoria Area Redesignation and Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards; Section 185 Fee Program, Final Rule*, 85 Fed. Reg. 8,411 (Feb. 14, 2020), and *Air Plan Approval; Texas; Dallas-Fort Worth Area Redesignation and Maintenance Plan for Revoked Ozone National Ambient Air Quality Standards; Final Rule*, 85 Fed. Reg. 19,096 (Apr. 6, 2020) (the "Final Rules").[1]

BCCA Appeal Group is an association of businesses whose mission includes supporting the mutual goals of clean air and a strong economy. BCCA Appeal Group members own and operate industrial facilities in Texas, including refineries and petrochemical plants, that are subject to regulation under the Texas State Implementation Plan ("SIP") that is the subject of the Final Rule.

The Texas Chemical Council ("TCC") is a statewide trade association representing nearly 70 chemical manufacturers operating approximately 200 Texas

---

[1] The petition for review was filed on April 16, 2020.

manufacturing and research facilities. The Texas chemical industry has more than $100 billion in physical assets in the state. TCC's members provide over 75,000 direct jobs and over 450,000 indirect jobs. TCC member companies manufacture products that improve the quality of life for all Americans and millions of people around the world. As with the BCCA Appeal Group, TCC's members are subject to regulation under the Texas SIP that is the subject of the Final Rules.

The Texas Oil and Gas Association ("TXOGA") is a non-profit corporation representing the interests of the oil and natural gas industry in the state of Texas. The membership of TXOGA produces in excess of 90 percent of Texas' crude oil and natural gas, operates nearly 100 percent of the state's refining capacity, and is responsible for the vast majority of the state's pipelines. Like BCCA Appeal Group and TCC, the members of TXOGA are subject to regulation under the Texas SIP that is the subject of the Final Rules.

Movants have a direct and substantial interest in this case and meet the standard for intervention. The BCCA Appeal Group, TCC, and TXOGA are comprised of members that own and operate industrial facilities in Texas subject to regulation under the Texas SIP, which is the subject of the Final Rule. Thus, Movants satisfy the criteria for intervention of right or permissive intervention, and their Motion to Intervene should be granted.

Counsel for EPA and Counsel for Petitioners have both stated that they do not oppose the Movants' motion to intervene.

## INTRODUCTION AND SUMMARY

Consistent with the requirements of the federal Clean Air Act ("CAA"), EPA first promulgated a national ambient air quality standard ("NAAQS") for ozone in 1979 (the "1-hour ozone standard"). *See* 44 Fed. Reg. 8,202 (Feb. 8, 1979). The NAAQS establish ozone concentration levels for geographic areas throughout the United States. States must develop implementation plans that demonstration "attainment" of the designated levels for areas within their respective boundaries. The farther an area deviates from "attainment," the more onerous the permitting requirements for sources within the area become.

Section 109(d) of CAA requires EPA to periodically review and revise the NAAQS "as may be appropriate." 42 U.S.C. § 7409(d). Pursuant to this requirement, and relevant to this litigation, EPA promulgated revised standards for ozone in 1997 and 2008. *See* 62 Fed. Reg. 38,894 (July 18, 1997); 73 Fed. Reg. 16,436 (March 27, 2008). In implementing each of these revised standards, EPA promulgated rulemakings that revoked the prior ozone standards—*i.e.,* the 1997 ozone standard's implementation rule revoked the 1-hour ozone standard and, thereafter, the 2008 ozone standard's implementation rule revoked the 1997 ozone standard. *See* 69 Fed. Reg. 23,857 (Apr. 30, 2004); 80 Fed. Reg. 12,264 (Mar. 6, 2012).

In implementing the 2008 ozone standard, EPA took the position that the formal mechanism for redesignating areas to "attainment" under the revoked 1-hour and 1997 8-hour ozone standards was no longer available to the agency, even where the areas met

those standards.  80 Fed. Reg. 12,264, 12,304 (Mar. 6, 2012).  Thus, states with areas that were technically designated as "nonattainment" under the 1-hour and 1997 ozone standards at the time of their revocation would have no mechanism by which to terminate these standards' associated requirements until the areas attained the more stringent 2008 standard.  To resolve this unintended result and reduce the unnecessary burdens on states and regulated facilities, EPA's implementation of the 2008 standard included a "redesignation substitute" mechanism whereby the state could terminate some, but not all, of the requirements associated with the revoked standards upon a showing that the area has "attained that revoked NAAQS due to permanent and enforceable emission reductions." 40 C.F.R. § 51.1105(b)(1).  EPA approved, through notice-and-comment rulemaking, such "redesignation substitute" demonstrations by the State of Texas for the Dallas-Fort Worth ("DFW") and Houston-Galveston-Brazoria ("HGB") areas under the revoked 1-hour and 1997 8-hour ozone NAAQS. *See* 80 Fed. Reg. 63,429 (Oct. 20, 2015); 81 Fed. Reg. 78,691 (Nov. 8, 2016); 81 Fed. Reg. 78,688 (Nov. 8, 2016).  No party challenged those final rules within the 60-day deadline for judicial review.  42 U.S.C. § 7607(b).

Separately, on February 16, 2018, the U.S. Court of Appeals for the District of Columbia Circuit issued an opinion that would vacate a number of the 2008 ozone NAAQS implementation rule's provisions related to the revocation of the 1997 ozone NAAQS, including the "redesignation substitute" mechanism.  *See S. Coast Air Quality Mgmt. Dist. v. EPA,* 882 F.3d 1138 (D.C. Cir. 2018) ("*South Coast*").  In light of this

decision, EPA promulgated the two Final Rules, which approve a plan for maintaining the revoked 1-hour and 1997 ozone NAAQS through 2032 in the HGB and DFW areas; determine that both areas are continuing to attain the revoked 1-hour and 1997 ozone NAAQS; determine that the state of Texas has met the CAA criteria for redesignation of the HGB and DFW areas for the 1- hour and 1997 ozone NAAQS; and terminate all anti-backsliding obligations for the HGB and DFW areas for both the 1-hour and 1997 ozone NAAQS.  Environmental Petitioners now petition this Court for review of the Final Rules.

Movants seek to intervene in support of Respondents because they have a direct and substantial interest in the challenged Final Rules.  If the Final Rules were vacated, Movants' members' facilities would be subject to additional regulatory requirements that would impact the facilities' operations and compliance costs.  Thus, the relief likely sought by the Environmental Petitioners would result in injury to Movants' members. Denying this relief would redress Movants' potential injuries.

## BACKGROUND

## I.   Statutory and Regulatory Background for the 1-Hour and 1997 8-Hour Ozone NAAQS

The CAA requires EPA to set a NAAQS for ozone, which is a standard for the concentration of ozone in the air that the states must seek to achieve.  In 1979, EPA, using 1-hour average concentration as the measure, set the standard at 0.12 parts per million ("ppm").  *See* 44 Fed. Reg. 8,202 (Feb. 8, 1979).

In 1990, Congress amended the CAA to require EPA and the states to develop attainment plans for areas not in compliance with that standard. An attainment plan, or SIP, includes the methods by which the state will work to attain the applicable ozone standard by its attainment date. EPA was also required to classify nonattainment areas as marginal, moderate, serious, severe, or extreme, depending on an area's deviation from the 1-hour ozone standard. The requirements for the regulated community become more onerous as the severity of the classification increases.

## II.  EPA's Revocation of the 1-Hour Ozone NAAQS

In 1997, EPA adopted a more stringent standard for ozone—the 8-hour ozone standard, which is met when the 8-hour average concentration of ozone in a given area is 0.08 ppm or less. *See* 40 C.F.R. § 50.10; 62 Fed. Reg. 38,894 (July 18, 1997). In 2004, to manage the transition from the 1-hour ozone standard to the 8-hour ozone standard, EPA promulgated the Phase I ozone implementation rule. The Phase I rule revoked the 1-hour ozone standard and eliminated EPA's obligation to determine whether an area "attained" the 1-hour standard by its attainment date. *See* 40 C.F.R. § 50, 51, 81 (as effective June 15, 2004); 69 Fed. Reg. 23,857 (Apr. 30, 2004); 40 C.F.R. § 51.905(e)(2)(i)(A) ("Upon revocation of the 1-hour [standard] for an area, EPA is no longer obligated . . . [t]o determine pursuant to section 181(b)(2) or section 179(c) of the CAA whether an area attained the 1-hour [standard] by that area's attainment date for the 1-hour [standard]."). The DFW and HGB areas were classified as "serious" and

"severe" nonattainment areas under the 1997 8-hour ozone NAAQS, respectively.  40 C.F.R. § 81.344.

## III.    EPA's Revocation of the 1997 8-Hour Ozone NAAQS

EPA adopted an even more stringent standard for ozone in 2008.  The new standard is met when the 8-hour average concentration of ozone in a given area is 0.075 ppm or less.  *See* 40 C.F.R. § 50.15; 73 Fed. Reg. 16,436 (March 27, 2008).

As before, EPA promulgated an implementation rule for the 2008 8-hour ozone standard that revoked the 1997 8-hour ozone standard and eliminated EPA's obligation to determine whether an area attained the 1997 8-hour standard by its attainment date. *See* 40 C.F.R. § 50, 51, 81 (as effective Mar. 6, 2015); 80 Fed. Reg. 12,264 (Mar. 6, 2012); 40 C.F.R. § 51.1105(d)(2)(i) ("As of April 6, 2015, the EPA is no longer obligated to determine pursuant to CAA section 181(b)(2) or section 179(c) whether an area attained the 1997 ozone NAAQS by that area's attainment date for the 1997 ozone NAAQS.").

Due to the revocation of the 1-hour and 1997 8-hour ozone NAAQS, EPA took the position that the formal mechanism for redesignating areas to "attainment" under the revoked standards was no longer available to the agency.  80 Fed. Reg. at 12,304-05.  As explained by EPA in the preamble to its 2012 rulemaking,

> Absent [a] second mechanism [for redesignating areas to attainment], areas that would otherwise have qualified for redesignation to attainment for the 1997 or 1-hour ozone NAAQS, were it not for revocation of those NAAQS, would need to continue implementing potentially outdated and onerous requirements for a NAAQS they have attained until they also

> qualify for redesignation to attainment for the more stringent 2008 ozone NAAQS.

*Id.* at 12,304. To resolve this inequity, EPA established the "redesignation substitute" mechanism to "provide a pathway for states to demonstrate and for the EPA to acknowledge that they have satisfied the applicable requirements for the revoked 1-hour or 1997 ozone NAAQS…" *Id.* at 12,305; *see also* 40 C.F.R. § 51.1105(b).

Once a state has made such a showing for an area, EPA's approval of a "redesignation substitute" for that state would terminate applicable requirements, including the nonattainment New Source Review requirements for the area associated with the revoked standard. 80 Fed. Reg. at 12,304. EPA approved, through notice-and-comment rulemaking, "redesignation substitute" demonstrations by the State of Texas for the HGB and DFW areas under the revoked 1-hour and 1997 8-hour ozone NAAQS. *See* 80 Fed. Reg. 63,429 (Oct. 20, 2015); 81 Fed. Reg. 78,691 (Nov. 8, 2016); 81 Fed. Reg. 78,688 (Nov. 8, 2016).

## IV.    The D.C. Circuit's Decision in *South Coast v. EPA*

On February 16, 2018, the D.C. Circuit ruled on challenges to features of EPA's 2012 rule implementing the 2008 ozone NAAQS. The D.C. Circuit's opinion reached a number of the rule's provisions related to the revocation of the 1997 ozone NAAQS, including the "redesignation substitute" mechanism that allowed states to terminate certain requirements under revoked standards. *S. Coast Air Quality Mgmt. Dist. v. EPA,* 882 F.3d 1138 (D.C. Cir. 2018). In response to this decision, EPA promulgated two

final actions approving a plan to maintain the 1-hour and 1997 ozone NAAQS through the year 2032; determine that the statutory criteria for redesignation have been met for the HGB and DFW areas; and terminate all anti-backsliding obligations for the HGB and DFW areas under those standards. *See* 85 Fed. Reg. 8411 (Feb. 14, 2020) (HGB area); 85 Fed. Reg. 19,096 (DFW area). These two actions are the subject of this petition for review.

## ARGUMENT

This Court should grant the motion to intervene in support of Respondents. Movants meet this Court's standard for intervention as of right as they possess concrete interests in defending the challenged Final Rules that differ from EPA's interests. However, even if this Court finds that Movants do not have the right to intervene, it should allow Movants to intervene because they meet the requirements for permissive intervention. Movants also clearly satisfy the requirements of Article III standing. Environmental Petitioners are likely seeking to vacate the Final Rules, in whole or in part. If the Final Rules were vacated, facilities of the Movants' members would be subject to additional regulatory requirements that would impact the facilities' operations and compliance costs. Thus, the relief likely sought by the Environmental Petitioners would result in injury to Movants' members. Denying this relief would redress Movants' potential injuries.

## V.    Movants Have Associational Standing under Article III.

Movants are associations whose members include the owners and operators of industrial facilities that are major stationary sources of air emissions in the HGB and DFW areas.  Accordingly, Movants have standing based on their membership because: (i) the interests at stake here are germane to its purpose; (ii) participation of individual members is not necessary; and (iii) Movants' members would have standing in their own right.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

First, the interests at stake are clearly germane to Movants' purpose.  Movants' goals include ensuring that Texas meets the air quality requirements of the CAA in a way that maintains the economic vitality of the state.  Movants' ability to achieve that goal is necessarily affected by challenges to EPA approval of SIP provisions that reduce burdens on stationary sources associated with ozone standards that have been superseded.

For those reasons, courts have previously found that the lead Movant had standing in litigation involving the regulation of ozone in Texas.  For example, BCCA Appeal Group challenged aspects of the attainment plan that was adopted for HGB when the 1-hour ozone standard was applicable.  This Court affirmed that BCCA Appeal Group had standing to assert the challenge:

> BCCA has suffered an injury in fact in the form of the costs of compliance with the Houston SIP's control measures, along with the added risks that its members will be responsible for any penalties assessed for the Houston SIP's failure to attain the ozone standard by the statutory deadline.  BCCA's injury is fairly traceable to EPA because, if BCCA's claims are true, EPA unlawfully approved a SIP that failed to meet minimum statutory

> requirements.  Finally, BCCA's injury is redressable by a decision in its favor because EPA would be forced to disapprove the portions of the Houston SIP the court finds incompatible with the CAA.  In addition, the approved SIP is federally enforceable against BCCA's members, so that a favorable decision would redress that threat of injury as well.  Accordingly, the court finds that BCCA has established its right to sue the EPA under Article III.

*BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 826 (5th Cir. 2003) (internal citations omitted).

When Texas revised its attainment plan, BCCA Appeal Group sought, and was granted, leave to intervene supporting EPA's defense against a challenge to the plan brought by an environmental organization.  *See Galveston-Houston Ass'n for Smog Prevention v. EPA*, 289 Fed. Appx. 745 (5th Cir. 2008).  More recently, when environmental petitioners sought review of EPA's final actions approving redesignation substitutes for the HGB and DFW areas, the BCCA Appeal Group, TXOGA, and TCC sought and were granted leave to intervene in support of EPA.  *See Downwinders at Risk et al. v. EPA et al.*, No. 18-60290 (5th Cir. 2018).

Because the Environmental Petitioners are attempting to force EPA to take action that would cause the HGB and DFW areas to become subject to more onerous regulatory requirements under the revoked 1-hour and 1997 8-hour ozone standards, and because Movants' interests involve ensuring that ozone regulations applicable in the DFW and HGB areas are consistent with the region's economic vitality, Movants easily satisfy the first associational standing factor.

Second, there is no need for any of Movants' members to participate individually in this action.  The issues raised by the Environmental Petitioners, and the defenses to

be raised by Movants, concern only statutory and regulatory interpretation and other questions of law. The participation of an individual member is not necessary, nor would it aid the parties or the Court in resolving this case.

Third, Movants' members would have standing to intervene themselves. To establish standing under Article III, a party must show (i) an injury-in-fact, (ii) causation, and (iii) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Movants' members can satisfy the injury-in-fact prong as the requested relief would impose additional regulatory requirements associated with a more stringent nonattainment status that would significantly impact the facilities' operations and compliance costs. It necessarily follows that such injury would be caused by the Environmental Petitioners' requested relief and that denying the Environmental Petitioners their requested relief would redress the identified injury by preventing it from occurring in the first place.

## VI.    Movants Are Entitled to Intervene as of Right

A party seeking to intervene must file a motion for leave within 30 days after the petition for review is filed. Fed. R. App. P. 15(d). Pursuant to Fifth Circuit Rule 15.5, a party seeking to intervene must file a motion "promptly after the petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor." Here, the petition for review was filed in this Court on April 16, 2020, and this Court has not set a due date for Respondent EPA's brief. Accordingly, Movants' motion to intervene is therefore timely.

Pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, a timely motion to intervene as of right must be granted when: (1) the movant has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties. Although the Federal Rules of Civil Procedure are only applicable in federal district courts, the Supreme Court has previously held that "[its] policies underlying intervention may be applicable in appellate courts." *Int'l Union v. Scofield,* 382 U.S. 205, 216 n.10 (1965). This Court has thus largely adhered to the requirements of Federal Rule of Civil Procedure 24 when determining whether there is a right to intervene. *See, e.g., Int'l Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir. 1978) ("It is well-settled that to intervene as of right each of the four requirements of [Rule 24] the rule must be met[.]").

### A.  Movants have a Direct and Substantial Interest in the Subject Matter and Outcome of this Litigation.

Movants' membership includes numerous entities that are subject to regulation under the Texas SIP, including owners and operators of refineries and petrochemical plants as well as other members of the oil and gas industry. Those members are regulated by the Texas SIP that is the subject of the Final Rules. If Petitioners are successful in their challenge and the Final Rule is vacated, Movants' interests will be impaired. Reflecting Movants' interest in this subject matter, they have been parties to the previous litigation over the Texas redesignation substitutes before the Fifth Circuit.

Because Movants have direct and substantial interests in the subject of Petitioners' challenge that will be impaired if any part of the Final Rule is vacated, intervention on behalf of Respondents is warranted.

### B. Movants' Direct and Substantial Interests will not be Adequately Protected by Existing Parties.

Movants' interest in Petitioners' challenge to the Final Rule will not be adequately represented by any of the existing parties to this case. The Supreme Court has noted that "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972); *see also Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir. 1994) ("The applicant need only show that representation 'may be' inadequate."). Neither EPA nor Petitioners adequately represent Movants' interests.

EPA cannot adequately represent Movants' interests in this case. As a governmental entity, EPA's interest must necessarily relate to the broader "general public interest." *John Doe #1 v. Glickman,* 256 F.3d 371, 380 (5th Cir. 2001) (reversing denial of motion to intervene in connection with challenge to agency action). Here, EPA's interest in the challenged actions relates to the fulfillment of its obligations under the CAA. By contrast, Movants' interest relates to the specific regulatory obligations required of its members in order to comply with the revoked 1-hour and 1997 8-hour ozone standards. Thus, Respondents are not positioned to adequately represent Movants' specific arguments and interests.

Petitioners' interests are directly opposed to Movants. While Petitioners are challenging the Final Rule and requesting that this Court review and vacate it, Movants seek to defend EPA's action. Accordingly, Petitioners cannot adequately represent Movants' interests. This means no party in the present litigation will adequately represent Movants' interests, making intervention appropriate.

## VII.    In the Alternative, Movants Satisfy the Standard for Permissive Intervention

Movants should be entitled to intervene as a matter of right, but, in the alternative, this Court should allow permissive intervention. "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). As previously demonstrated, Movants timely filed their motion for leave to intervene and have shown a direct and substantial interest in the Final Rule that will be impaired if the Final Rule is vacated. As a result, Movants seek to argue that EPA acted lawfully in promulgating the Final Rule. Therefore, a common question of law exists, and permissive intervention should be granted.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their motion for leave to intervene in support of Respondents.

Dated: May 14, 2020                    Respectfully submitted,


                                       *s/ Matthew Kuryla*
                                       Matthew Kuryla
                                       Telephone: (713) 229-1145
                                       matthew.kuryla@bakerbotts.com
                                       Aaron M. Streett
                                       Telephone: (713) 229-1855
                                       aaron.streett@bakerbotts.com
                                       BAKER BOTTS L.L.P.
                                       One Shell Plaza
                                       910 Louisiana Street
                                       Houston, Texas 77002-4995

                                       *Counsel for Movant-Intervenors BCCA Appeal*
                                       *Group, TCC, and TXOGA*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 3756 words, excluding the caption and signature blocks, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

Dated: May 14, 2020

*s/ Matthew Kuryla*
Counsel for Movant-Intervenors

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 14 day of May, 2020.

_s/ Matthew Kuryla_
Counsel for Movant-Intervenors